UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

**BARTLETT MUSLIM SOCIETY,**

     **Plaintiff,**

**v.**                                **No. 2:25-cv-02746-MSN-cgc**
                                        **JURY DEMANDED**

**CITY OF BARTLETT,**

     **Defendant.**

---

### DEFENDANT CITY OF BARTLETT'S ANSWER TO FIRST AMENDED COMPLAINT

---

       Defendant, City of Bartlett (hereinafter "City"), for its answer to the First Amended Complaint states as follows:

### FIRST DEFENSE

       The First Amended Complaint fails to state a plausible claim against the City upon which relief could be granted and, therefore, should be dismissed with prejudice.

### SECOND DEFENSE

       Referring in particular to the numbered paragraphs of the First Amended Complaint, the City states the following:

       1.     The City admits that Plaintiff seeks to build a mosque on land it owns in the City that is zoned "R-E Residential Real Estate," which can be built on this specific parcel only by obtaining a favorable recommendation by the Planning Commission; approval of a special use permit by the Board of Mayor and Aldermen; satisfaction of all conditions, which includes approval by CSX Transportation, Inc.—an entity outside the control of the City of Bartlett—to bore under that entity's railroad track in order to obtain one or more utilities; and site plan approval by the Planning Commission and the Design Review Commission.

1

2.      The City admits that Plaintiff submitted an application for a special use permit. The
remaining allegations contained in paragraph 2 are denied.

3.      The allegations contained in paragraph 3 of the First Amended Complaint constitute
legal conclusions or argument to which no response is required. To the extent that a response is
deemed to be necessary, the City admits that Plaintiff's application for a special use permit was
denied for legitimate, non-discriminatory reasons. The remaining allegations contained in
paragraph 3 are denied.

4.      The allegations contained in paragraph 4 of the First Amended Complaint constitute
legal conclusions or argument to which no response is required. To the extent that a response is
deemed to be necessary, the City denies said allegations as written. The City denies that it treated
other churches differently and denies that the circumstances presented by the application for the
church identified in paragraph 4 were similarly-situated to those presented by the application
submitted by Plaintiff.

5.      Denied.

6.      The allegations contained in paragraph 6 of the First Amended Complaint constitute
legal conclusions or argument to which no response is required. To the extent that a response is
deemed to be necessary, the City denies that it violated Plaintiff's rights under federal or state law.

7.      The City admits that Plaintiff purports to sue the City under the statutes referenced
in paragraph 7, but denies that it violated Plaintiff's rights under either statute.

8.      The City admits that Plaintiff purports to sue the City under the statutes referenced
in paragraph 7, but denies that it violated Plaintiff's rights under either statute and denies that
Plaintiff is entitled to any of the relief sought.

9.      Upon information and belief, the City admits that Plaintiff is a nonprofit religious organization; denies that its corporate status at the time that this lawsuit was filed was active; and is without information and belief as to any actions taken by Plaintiff after its Answer was filed to changes its status and, therefore, denies said allegations to make issue.

10.     Admitted.

11.     While denying that the events and occurrences alleged in the First Amended Complaint occurred as alleged or that Plaintiff has a cause of action against it under the statutes referenced in paragraph 11 or otherwise, the City admits that this Honorable Court has subject matter jurisdiction over Plaintiff's federal claims and may properly accept supplemental jurisdiction over Plaintiff's state claim.

12.     While denying that the events and occurrences alleged in the First Amended Complaint occurred as alleged or that Plaintiff has a cause of action against it under the statutes referenced in paragraph 12 or otherwise, the City admits that venue is proper.

13.     The City admits, upon information and belief, that Plaintiff is a Muslim religious organization. It is without knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 13 and, therefore, denies said allegations to make issue.

14.     The City is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 14 and, therefore, demands strict proof thereof if its rights or interests are to be affected adversely thereby.

15.     The City is without knowledge or information sufficient to admit or deny the allegations regarding the adequacy of the facility where Plaintiff currently holds worship services as alleged in paragraph 15 and, therefore, denies said allegations to make issue. The City further

avers that Plaintiff voluntarily chose said location and has continued to worship there since 2019 despite feasible alternative locations, and that any "burden" is self-imposed.

16.     The City is without knowledge or information sufficient to admit or deny the allegations regarding the space inside the facility where Plaintiff currently holds worship services as alleged in paragraph 16 and, therefore, denies said allegations to make issue. The City further avers that Plaintiff voluntarily chose said location and has continued to worship there since 2019 despite feasible alternative locations, and that any "burden" is self-imposed.

17.     The City is without knowledge or information sufficient to admit or deny the allegations regarding the space inside the facility where Plaintiff currently holds worship services as alleged in paragraph 17 and, therefore, denies said allegations to make issue. The City further avers that Plaintiff voluntarily chose said location and has continued to worship there since 2019 despite feasible alternative locations, and that any "burden" is self-imposed.

18.     The City is without knowledge or information sufficient to admit or deny the allegations regarding the space inside the facility where Plaintiff currently holds worship services as alleged in paragraph 18 and, therefore, denies said allegations to make issue. The City further avers that Plaintiff voluntarily chose said location and has continued to worship there since 2019 despite feasible alternative locations, and that any "burden" is self-imposed.

19.     The City is without knowledge or information sufficient to admit or deny the allegations regarding the restrooms inside the facility where Plaintiff currently holds worship services as alleged in paragraph 19 and, therefore, denies said allegations to make issue. The City further avers that Plaintiff voluntarily chose said location and has continued to worship there since 2019 despite feasible alternative locations, and that any "burden" is self-imposed.

20.     The City is without knowledge or information sufficient to admit or deny the allegations regarding the basins and other equipment in the restrooms inside the facility where Plaintiff currently holds worship services as alleged in paragraph 20 and, therefore, denies said allegations to make issue. The City further avers that Plaintiff voluntarily chose said location and has continued to worship there since 2019 despite feasible alternative locations, and that any "burden" is self-imposed.

21.     The City is without knowledge or information sufficient to admit or deny the allegations regarding the availability of kitchen facilities inside the facility where Plaintiff currently holds worship services as alleged in paragraph 21 and, therefore, denies said allegations to make issue. The City further avers that Plaintiff voluntarily chose said location and has continued to worship there since 2019 despite feasible alternative locations, and that any "burden" is self-imposed.

22.     The City is without knowledge or information sufficient to admit or deny the allegations regarding the availability of kitchen facilities inside the facility where Plaintiff currently holds worship services as alleged in paragraph 22 and, therefore, denies said allegations to make issue. The City further avers that Plaintiff voluntarily chose said location and has continued to worship there since 2019 despite feasible alternative locations, and that any "burden" is self-imposed.

23.     The City is without knowledge or information sufficient to admit or deny the allegations regarding the space inside the facility where Plaintiff currently holds worship services as alleged in paragraph 23 and, therefore, denies said allegations to make issue. The City further avers that Plaintiff voluntarily chose said location and has continued to worship there since 2019 despite feasible alternative locations, and that any "burden" is self-imposed.

24.     The City is without knowledge or information sufficient to admit or deny the allegations regarding the space inside the facility where Plaintiff currently holds worship services as alleged in paragraph 24 and, therefore, denies said allegations to make issue. The City further avers that Plaintiff voluntarily chose said location and has continued to worship there since 2019 despite feasible alternative locations, and that any "burden" is self-imposed.

25.     The City is without knowledge or information sufficient to admit or deny the allegations regarding the space inside the facility where Plaintiff currently holds worship services as alleged in paragraph 25 and, therefore, denies said allegations to make issue. The City further avers that Plaintiff voluntarily chose said location and has continued to worship there since 2019 despite feasible alternative locations, and that any "burden" is self-imposed.

26.     The City is without knowledge or information sufficient to admit or deny the allegations regarding the space inside the facility where Plaintiff currently holds worship services as alleged in paragraph 26 and, therefore, denies said allegations to make issue. The City further avers that Plaintiff voluntarily chose said location and has continued to worship there since 2019 despite feasible alternative locations, and that any "burden" is self-imposed. The City further denies that it takes thirty minutes to drive from Bartlett to Memphis.

27.     The allegations contained in paragraph 27 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City avers that Plaintiff voluntarily chose said location and has continued to worship there since 2019 despite feasible alternative locations; avers that any "burden" is self-imposed; denies that it takes "over an hour" to drive from Bartlett to Memphis and then drive home; and avers that this is a mere inconvenience and not a "substantial burden."

28.     The allegations contained in paragraph 28 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City avers that Plaintiff voluntarily chose said location and has continued to worship there since 2019 despite feasible alternative locations; and that any "burden" is self-imposed.

29.     The City is without knowledge or information sufficient to admit or deny the allegations regarding members of the public renting the space next to the facility where Plaintiff currently holds worship services as alleged in paragraph 29 and, therefore, denies said allegations to make issue. The City avers that Plaintiff voluntarily chose said location and has continued to worship there since 2019 despite feasible alternative locations, and that any "burden" is self-imposed. The City further avers that, if said space is available for members of the public to rent, it is also available for Plaintiff to rent, which would provide additional space and facilities for Plaintiff to conduct worship services.

30.     The City is without knowledge or information sufficient to admit or deny the allegations regarding parties in the space next to the facility where Plaintiff currently holds worship services as alleged in paragraph 30 and, therefore, denies said allegations to make issue. The City avers that Plaintiff voluntarily chose said location and has continued to worship there since 2019 despite feasible alternative locations, and that any "burden" is self-imposed. The City further avers that, if said space is available for members of the public to rent, it is also available for Plaintiff to rent, which would provide additional space and facilities for Plaintiff to conduct worship services and avoid any interruption caused by parties.

31.     The City is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 31 and, therefore, denies said allegations to make issue.

32.     The City is without knowledge or information sufficient to admit or deny the allegations regarding space to spend time with family members as alleged in paragraph 32 and, therefore, denies said allegations to make issue. The City avers that Plaintiff voluntarily chose said location and has continued to worship there since 2019 despite feasible alternative locations; that any "burden" is self-imposed; and avers that, if space is available for members of the public to rent next to Plaintiff's current facility, it is also available for Plaintiff to rent, which would provide additional space and facilities to meet collectively.

33.     The City is without knowledge or information sufficient to admit or deny the allegations regarding space to meet Plaintiff's needs as alleged in paragraph 33 and, therefore, denies said allegations to make issue. The City avers that Plaintiff voluntarily chose said location and has continued to worship there since 2019 despite feasible alternative locations; that any "burden" is self-imposed; avers that, if space is available for members of the public to rent next to Plaintiff's facility, it is also available for Plaintiff to rent, which would provide additional space and facilities to meet Plaintiff's needs.

34.     The allegations contained in paragraph 34 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City avers that Plaintiff voluntarily chose its current location and has continued to worship there since 2019 despite feasible alternative locations that don't present the problems associated with its proposed location for the mosque; that any "burden" is self-imposed; avers that, if space is available for members of the public to rent next to Plaintiff's facility, it is also available for Plaintiff to rent, which would provide additional space and facilities to meet Plaintiff's needs; and avers that, by ignoring feasible alternative locations that don't

present the significant problems associated with its proposed location, any "burden" is self-imposed.

35.     Denied as written. The City admits that Plaintiff purchased property located on Broadway Road in May, 2022 despite being aware of the problems associated with said property and knowing how bad the intersection was. The City avers that Plaintiff ignored other available properties on which a mosque could be built or a building could be bought or rented that could serve as a mosque that do not have the significant problems presented by the proposed property. The City further avers that Plaintiff's proposed property is zoned "R-E Residential Real Estate;" and denies that requiring Plaintiff to perform a traffic study was a means used to delay Plaintiff's efforts to obtain a special use permit. The traffic study itself was not completed until September 2024—almost 11 months after the initial Planning Commission meeting. Further, the City denies that it treated Plaintiff differently than it treated other religious and non-religious entities by requiring it to perform a traffic study.

36.     Denied as written. The City admits that a religious institution can only be constructed in "R-E Residential Real Estate" zoning district if the Planning Commission recommends that the Board of Mayor and Aldermen issue a special use permit; if a special use permit is issued by the Board of Mayor and Aldermen; and if all conditions are met, which, for Plaintiff's proposed property, includes approval by CSX Transportation, Inc. —an entity outside the control of the City of Bartlett—to bore under its railroad track in order to obtain one or more utilities; and if a site plan is approved by the Planning Commission and the Design Review Commission.

37.     Denied as written. The City admits that a sketch plan was submitted with Plaintiff's September 5, 2023 application for a special use permit to construct a 5,000 square foot mosque,

with a planned expansion to 15,000 square feet, 165 parking places, and access from Broadway Road.

38.    Admitted.

39.    The City admits that Plaintiff's application was discussed at a public hearing on October 2, 2023, but denies that a decision was made that evening whether to make a recommendation to the Board of Mayor and Aldermen on Plaintiff's application.

40.    The allegations contained in paragraph 40 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations as written. The City avers that there were no statements evincing any sort of anti-Muslim animus or any opinion at all towards Islam at the December 2, 2024 Planning Commission meeting when the unfavorable recommendation by the Planning Commission was made or at the February 11, 2025 meeting when the Board of Mayor and Aldermen voted to deny the special use permit.

41.    The City admits that, at a public hearing more than one year before any recommendation was made at the December 2, 2024 Planning Commission meeting, one resident—who did not speak for any member of the Planning Commission; who did not speak for the City; and who did not even speak for the other residents in attendance at the meeting—made the referenced comment and was promptly told to take his seat. The City avers that there were no statements evincing any sort of anti-Muslim animus or any opinion at all towards Islam at the December 2, 2024 Planning Commission meeting when the unfavorable recommendation by the Planning Commission was made or at the February 11, 2025 meeting when the Board of Mayor and Aldermen voted to deny the special use permit.

42.     The allegations contained in paragraph 42 of the First Amended Complaint, which must be considered in the context of paragraph 40, constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations as written, but admits that, more than one year before any recommendation was made at the December 2, 2024 Planning Commission meeting, one resident—who did not speak for any member of the Planning Commission; who did not speak for the City; and who did not even speak for the other residents in attendance at the meeting—made a comment that he thought that no further churches were needed in Bartlett and said that members of Plaintiff's congregation were welcome to attend the church at which he was a deacon. The City avers that there were no statements evincing any sort of anti-Muslim animus or any opinion at all towards Islam at the December 2, 2024 Planning Commission meeting when the unfavorable recommendation by the Planning Commission was made or at the February 11, 2025 meeting when the Board of Mayor and Aldermen voted to deny the special use permit. To the contrary, at both meetings, not only were no anti-Muslim comments made, members of both the Planning Commission and the Board of Mayor and Aldermen made clear that their recommendation or decision was site-specific; was not about the religious identity of the Plaintiff; and reiterated that the Bartlett Muslim Society and its mosque are welcome in the Bartlett community.

43.     Denied as written. At the October 2, 2023 Planning Commission meeting, two members of the Planning Commission interjected after a resident—who did not speak for the members of the Planning Commission; who did not speak for the City; and who did not even speak for other residents in attendance at the meeting—stated his personal belief that "Muslims do not believe in God," told the resident to sit down. The City avers that there were no statements evincing any sort of anti-Muslim animus or any opinion at all towards Islam at the December 2, 2024

Planning Commission meeting when the unfavorable recommendation by the Planning Commission was made or at the February 11, 2025 meeting when the Board of Mayor and Aldermen voted to deny the special use permit. To the contrary, at both meetings, not only were no anti-Muslim comments made, members of both the Planning Commission and the Board of Mayor and Aldermen made clear that their recommendation or decision was site-specific; was not about the religious identity of the Plaintiff; and reiterated that the Bartlett Muslim Society and its mosque are welcome in the Bartlett community.

44.    Admitted.

45.    Denied as written. The City admits that Mr. Hossain stated that Plaintiff was willing and eager to comply with any recommendation from the Planning Commission and any local regulations.

46.    Denied as written. The City admits that Mr. Hossain stated that Plaintiff would consider altering its plans to accommodate the City's concerns.

47.    Denied as written. The City admits that Mr. Bray stated at the October 2, 2023 meeting that Plaintiff's "plan is very much at the conceptual level so far. The suspected problem is that the pipe [carrying water] under the railroad is too small;" that he "suspects that the drain pipe currently under the railroad track is too small for the level of development happening;" that "the detention basin will likely be bigger than the conceptual plan on tonight's application shows in order to be able to store the water;" that "[t]here are no architectural plans yet. If the SUP goes from the PC to the Board of Mayor and Aldermen and is approved, architectural and engineering plans would then be submitted. At that stage, civil engineering plans would be firmed up via the submission of a Site Plan application to the PC. Architectural plans would be firmed up via Site Plan application to the Design Review Commission." The City further admits that, at the December 2, 2024 Planning Commission meeting, Mr. Bray advised the Planning Commission that "[t]his is far from being a done

deal at this point. There is not a Site Plan yet. We've got to put pencil to paper, particularly with the sewer situation under the railroad and the widening of Broadway Road."

48.    Denied as written. The City admits that members of the Planning Commission voted at the October 2, 2023 meeting to defer the vote on whether to recommend a special use permit until the traffic study could be presented to the Planning Commission as has been done with other applications. The City denies any suggestion that the traffic study required more of the Plaintiff than other applicants under similar circumstances.

49.    Denied as written. The City denies that it did not require other special use permit applicants, including other churches, to conduct a traffic study and denies any suggestion that requiring Plaintiff to conduct a traffic study was in any way discriminatory. Prior to receiving a special use permit for the construction of its church and later for the construction of a school, the Planning Commission required Christian Life Tabernacle to conduct a traffic study. The Planning Commission gave an unfavorable recommendation for Harmony Church's application for a special use permit because it had insufficient site plans—including the lack of a traffic study. Harmony Church ultimately withdrew its application for a special use permit—and the application never went before the Board of Mayor and Aldermen—and ultimately relocated to an existing church site, which did not require a special use permit.

50.    Denied as written. The message included in paragraph 50 was not between two Planning Commissioners. The City denies any suggestion that the knowledge of any Planning Commissioner of the unique traffic, sewer, water, and drainage problems associated with the location where Plaintiff sought to build the Mosque is improper or is evidence of discriminatory motive.

51.    Denied as written. The City admits that Plaintiff retained Dr. Martin Lipinksi to perform the traffic study. The City is without knowledge or information sufficient to admit or deny

the remaining allegations contained in paragraph 51 and, therefore, denies said allegations to make issue.

52.      Denied as written. The City admits that topics were provided to Dr. Lipinski for the traffic study that the City needed him to address in the study, including but not limited to, that it be conducted on a typical weekday when school is in session; that the report consider the traffic prior to the 7:00 a.m. Ninth Grade Academy start time; that the traffic study consider the fact that buses heading to all of the Bartlett municipal schools start from Shadowlawn Road; that the traffic study consider that, along with Bartlett High School and some Middle Schools, the Ninth Grade Academy is dismissed at 2:00 p.m. and that the latest school dismissal time was 4:00 p.m.; and that the traffic study consider the cut-through traffic through the streets in the Louella neighborhood.

53.      The City admits that topics were provided to Dr. Lipinski for the traffic study that the City needed him to address in the study, including but not limited to, that the traffic study be conducted on a typical weekday when school is in session; that the traffic study consider the traffic prior to the 7:00 a.m. Ninth Grade Academy start time; that the traffic study consider the fact that buses heading to all of the Bartlett municipal schools start from Shadowlawn Road; that the traffic study consider that, along with Bartlett High School and some Middle Schools, the Ninth Grade Academy is dismissed at 2:00 p.m. and that the latest school dismissal time was 4:00 p.m.; and that the traffic study consider the cut-through traffic through the streets in the Louella neighborhood.

54.      The City is without knowledge or information sufficient to admit or deny the allegation contained in paragraph 54 and, therefore, denies said allegation to make issue.

55.     The City admits that the traffic study was over 120 pages long, but denies that its analyses and conclusions were accurate because it did not include analysis or data about the traffic associated with the Ninth Grade Academy or cut-through traffic on the streets in the Louella neighborhood as specified by the City. The City avers that, at the February 11, 2025 Board meeting, Dr. Lipinski advised the Board for the first time that he "didn't want to collect data when school was in session or to collect data where there might be any other areas of adverse impact." Dr. Lipinski advised the Board that his data "showed cut through traffic on Louella only when the train was there;" that he collected no data on Fonta, which is used as a cut-through; and that "Five-way" (the closest intersection to the proposed Mosque) was terrible," confirming that its level of service rating was "F," and stating that he would never design it.

56.     The City is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 56 and, therefore, denies said allegations to make issue. The City admits that Dr. Lipinski stated that he had to create his own methodology because there was no guidance in his industry handbook about the mosque.

57.     The City admits that the traffic study contained the referenced inaccurate findings and that, when questioned by Board Members at the February 11, 2025 Board meeting, Dr. Lipinski advised the Board for the first time that he "didn't want to collect data when school was in session or to collect data where there might be any other areas of adverse impact." Dr. Lipinski advised the Board that his data "showed cut through traffic on Louella only when the train was there;" that he collected no data on Fonta, which is used as a cut-through; and that "Five-way" (the closest intersection to the proposed Mosque) was terrible," confirming that the service level of that intersection was "F," and stating that he would never design it.

58.     The City admits that the traffic study contained these referenced inaccurate findings and that, when questioned by Board Members at the February 11, 2025 Board meeting, Dr. Lipinski advised the Board for the first time that he "didn't want to collect data when school was in session or to collect data where there might be any other areas of adverse impact." Dr. Lipinski advised the Board that his data "showed cut through traffic on Louella only when the train was there;" that he collected no data on Fonta, which is used as a cut-through; and that "Five-way" (the closest intersection to the proposed Mosque) was terrible," confirming that the service level of that intersection was "F," and stating that he would never design it.

59.     Denied as written. The City admits that, when questioned by Board Members at the February 11, 2025 Board meeting, Dr. Lipinski advised the Board for the first time that he "didn't want to collect data when school was in session or to collect data where there might be any other areas of adverse impact." Dr. Lipinski advised the Board that his data "showed cut through traffic on Louella only when the train was there;" that he collected no data on Fonta, which is used as a cut-through; and that "Five-way" (the closest intersection to the proposed Mosque) was terrible," confirming that the service level of that intersection was "F," and stating that he would never design it.

60.     Denied as written. The Bartlett Planner does not issue recommendations based upon the merits of applications, but, rather, simply provides that, if all proposed staff recommendations, along with any additional recommendations that the Planning Commission or Board of Mayor and Aldermen vote to add are completely followed, an application may properly be approved. Further, upon review of the traffic study and questioning during the February 11, 2025 Board meeting, it was clear to the Board that Plaintiff's traffic study did not satisfy the City's requirements and was inaccurate.

16

61.    Admitted.

62.    Denied as written. The City admits that the revised plan reduced the number of proposed parking spaces to 52; however, contrary to the allegations in paragraph 62, at the December 2, 2024 Planning Commission meeting, Mr. Bray represented to the Planning Commission that the number of spaces was reduced because there had been a miscommunication between him and his client at the October 2, 2023 meeting. The City admits that, based upon legitimate, non-discriminatory reasons, the Planning Commission voted to send an unfavorable recommendation to the Board of Mayor and Aldermen. The City denies any suggestion conferred by Plaintiff's use of the words "despite this" that the Planning Commission's decision was contrary to the evidence or that the reduction of traffic spaces was dispositive on the Planning Commission's unfavorable recommendation. The City further denies any suggestion that the City ignored the traffic study's conclusions and categorically denies any suggestion that the denial was related to any type of anti-Muslim animus. Finally, the City denies that the favorable conclusion of the traffic study suggests otherwise because, as confirmed at the February 11, 2025 Board meeting, Alderman Young's recognition that the traffic study was inaccurate was confirmed, along with confirmation that the traffic study did not address the topics identified by the City.

63.    The allegations contained in paragraph 63 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies that Alderman Young admitted his decision was pre-determined. He simply questioned the validity of the conclusions in the traffic study that were contrary to his longstanding personal knowledge of the intersection and area at issue. The City further avers that the Alderman/Vice Mayor's concern as to the accuracy of the conclusions in the traffic study was validated during the February 11, 2025 Board meeting.

17

64.    The City Admits that Alderman/Vice Mayor Young made the referenced comment based upon his longstanding personal knowledge of the intersection and area at issue.

65.    The allegations contained in paragraph 65 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations.

66.    The City admits that, during the December 2, 2024 Planning Commission meeting, a member of the Planning Commission asked about the absence of cut-through traffic in the traffic study, as such information is important in considering an application for a special use permit; and admits that the City had requested that such information be included in the traffic study; and admits that Dr. Lipinksi's traffic study did not include such information other than a cursory—and inaccurate—statement that there was cut-through traffic on Louella only when a train was there.

67.    Denied. The traffic study did not consider the impact that the mosque might have at times when the Ninth Grade Academy was in session, in particular during the early hours before school started at 7 a.m. and early morning prayer would take place at the proposed mosque and the hours at or before dismissal; it did not consider the impact that the mosque might have when buses heading to the municipal schools were driving through the area during the time of afternoon prayer at the proposed mosque; and it did not consider the effect of cut-through traffic on the streets in the area, which was already a problem for the neighborhood residents, but made a cursory—and inaccurate—statement that there was cut-through traffic on Louella only when a train was there.

68.    The allegations contained in paragraph 69 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies that houses of worship are exempt from complying with zoning law, and admits that, on February 11, 2025, the Board of Mayor and

18

Aldermen denied Plaintiff's application for a special use permit for legitimate, non-discriminatory reasons that do not violate Plaintiff's rights under federal or state law.

70.     Paragraph 70 does not contain factual allegations but instead consists of arguments and conclusions that do not require a response. To the extent a response is deemed to be necessary, the City denies said allegations.

71.     Denied.

72.     Denied as written. The approval process for Christian Life Tabernacle entailed three Planning Commission meetings before a recommendation was made to the Board of Mayor and Aldermen; contained extensive site plan requirements; and required a traffic study, which was 141 pages in length. The Christian Life Tabernacle traffic study was completed and submitted to the City in much less time than Plaintiff's traffic study. Christian Life Tabernacle's application did not involve the unique problems associated with Plaintiff's proposed site.

73.     Denied as written. Although Christian Life Tabernacle did not delay submitting the traffic study as long as Plaintiff did and its application did not involve the unique problems associated with Plaintiff's proposed property, the approval process took nearly six months.

74.     The allegations contained in paragraph 74 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations, as Plaintiff has the ability to rent additional space in its current location to provide additional space. Additionally, there is property available in the City of Bartlett on which Plaintiffs could build a mosque or buy or rent a building to use as a mosque that do not have the significant problems associated with Plaintiff's proposed site and which would not result in all of the expenses that would be necessary to build on the proposed site due to its location and water, sewer, and drainage problems, nor would it

require approval from an entity outside the control of the City of Bartlett to bore under a railroad track to obtain one or more utilities. Further, depending upon the zoning of said available property, a special use permit would not be required.

75.    Denied.

76.    The City denies that it treated Plaintiff differently than any other religious or no-religious entity and avers that any delay was self-induced.

77.    The allegations contained in paragraph 77 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations. The City did not treat Plaintiff differently than any other religious or non-religious entity. The expense involved with the application and the traffic study are such that would be incurred by any applicant seeking a special use permit for a problematic tract, particularly a tract such as Plaintiff's tract that necessitated approval from an entity outside the control of the City of Bartlett to bore under a railroad track in order to obtain one or more utilities; and the expense to maintain its property is imposed upon all property owners.

78.    Upon information and belief, the City admits that the low price for an 8-acre tract reflected the substantial problems to develop said property and that, as Plaintiff was aware of the traffic, sewer, water and drainage problems on this tract and the problems with the 5-way intersection, the City avers that Plaintiff did not have a reasonable expectation that it would be able to construct a mosque at this location. The City avers that Plaintiff ignored other available properties in Bartlett that did not present the same problems—and did not require approval by an entity outside the control of the City of Bartlett to bore under a railroad track in order to obtain one or more utilities—on which a mosque could have been built or a building could have been bought

or rented that could be used as a mosque. Further, the City avers that, depending upon the zoning of said available property, a special use permit would not be required. As a result of the foregoing, the City avers that any burden is self-imposed.

79.     The allegations contained in paragraph 79 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations and avers that multiple Aldermen advised Plaintiff during the February 11, 2025 meeting that their concerns were limited to this particular tract of land and that they wanted Plaintiff and the mosque to remain in Bartlett— just in a different location.

80.     The allegations contained in paragraph 80 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations.

81.     The City incorporates by reference the responses and defenses asserted in the preceding paragraphs as if set forth verbatim herein.

82.     The allegations contained in paragraph 82 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations.

83.     The allegations contained in paragraph 83 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations.

84.     The allegations contained in paragraph 84 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations.

85.     The allegations contained in paragraph 85 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations. The City did not treat Plaintiff differently than any other religious or non-religious entity, and the expense involved with the application and the traffic study are such that would be incurred by any applicant seeking a special use permit for a problematic tract, particularly a tract such as Plaintiff's tract that necessitated approval from an entity outside the control of the City of Bartlett to bore under a railroad track in order to obtain one or more utilities; and the expense to maintain its property is imposed upon all property owners.

86.     Denied. Assuming that Plaintiff chooses not to obtain additional space in its current location or buy or rent a building in another location in Bartlett to use as a mosque, the City avers that Plaintiff can construct its house of worship in a commercially zoned district in Bartlett without the need for a special use permit, or it could seek a special use permit in another residential district location that does not pose similar traffic, sewer, water, and drainage issues as the proposed location and does not require approval from an entity outside the control of the City of Bartlett to bore under a railroad track in order to have one or more utilities.

87.     Denied. Upon information and belief, Plaintiff has the ability to rent additional space in its current location and thereby increase the space available to meet its needs; and Plaintiff can make arrangements with the landlord to construct a kitchen and bathroom facilities that will meet its needs. Alternatively, there are other buildings available in Bartlett which could accommodate Plaintiff's needs.

88.    The allegations contained in paragraph 88 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations.

89.    The allegations contained in paragraph 89 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations.

90.    The allegations contained in paragraph 90 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations.

91.    The allegations contained in paragraph 91 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations.

92.    The allegations contained in paragraph 92 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations.

93.    The City is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 93 and, therefore, denies said allegations to make issue.

94.    The allegations contained in paragraph 94 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations and avers that, as Plaintiff has failed to establish that the City has substantially burdened its religious exercise, the compelling government interest/least restrictive means issue need not be addressed.

95.     The allegations contained in paragraph 95 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations and avers that, as Plaintiff has failed to establish that the City has substantially burdened its religious exercise, the compelling government interest/least restrictive means issue need not be addressed.

96.     Denied. Plaintiff refused to consider any location other than the proposed location and continues to refuse to consider other locations in Bartlett on which a mosque could be constructed or a building could be bought or rented and utilized as a mosque. Such burden is self-imposed.

97.     Denied. Plaintiff has not come forward with any adjustment to Plaintiff's plans that addresses all of traffic, sewer, water, and drainage issues at the proposed location.

98.     The allegations contained in paragraph 98 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations.

99.     The City incorporates by reference the responses and defenses asserted in the preceding paragraphs as if set forth verbatim herein.

100.    The allegations contained in paragraph 100 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations.

101.    The allegations contained in paragraph 101 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations.

102.    The allegations contained in paragraph 102 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations.

103.    Denied.

104.    Denied as written The referenced isolated statements, one of which is not accurately set forth, were not a part of the permitting process; were not made by a City official or employee; and were not made at any meeting in which a recommendation or decision regarding the application for a special use permit was made. To the contrary, not only were no anti-Muslim comments made during the December 2, 2024 Planning Commission meeting and the February 11, 2025 Board of Mayor and Aldermen meetings, members of both the Planning Commission and the Board of Mayor and Aldermen made clear during those meetings that their recommendation or decision was site-specific; was not about the religious identity of the Plaintiff; and reiterated that the Bartlett Muslim Society and its mosque are welcome in the Bartlett community.

105.    The allegations contained in paragraph 105 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations. Members of the Planning Commission interjected after one member of the public—who did not speak for the Planning Commission; who did not speak for the City; who did not speak for any other resident present at that meeting, or for any other resident of the City—stated his personal belief at the October 2, 2023 meeting that "Muslims do not believe in God" and told that person to sit down. Moreover, at the meetings in which a recommendation or decision regarding the application for a special use permit were considered, not only were no anti-Muslim comments made, members of both the Planning Commission and the Board of Mayor and Aldermen made clear that their recommendation or

decision was site-specific; was not about the religious identity of the Plaintiff; and reiterated that the Bartlett Muslim Society and its mosque are welcome in the Bartlett community.

106.    Denied. The referenced comments, one of which is not accurately set forth and neither of which were made by City Officials or members of the Planning Commission, were made at the October 2, 2023 meeting where the members of the Planning Commission voted to continue the agenda item until the traffic study could be completed and not at the December 2, 2024 meeting where the unfavorable recommendation vote occurred. Moreover, at the meetings in which a recommendation or decision regarding the application for a special use permit were considered, not only were no anti-Muslim comments made, members of both the Planning Commission and the Board of Mayor and Aldermen made clear that their recommendation or decision was site-specific; was not about the religious identity of the Plaintiff; and reiterated that the Bartlett Muslim Society and its mosque are welcome in the Bartlett community.

107.    The allegations contained in paragraph 107 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations. Even though Christian Life Tabernacle is not located at a five-way intersection with the sewer, water, and drainage problems associated with Plaintiff's property and was located on one side of the street in between two access roads, it was required to perform a traffic study that ultimately spanned 141 pages. Harmony Church did not obtain a favorable recommendation from the Planning Commission because of inadequate plans, including the lack of a traffic study, and instead withdrew its application.

108.    The allegations contained in paragraph 108 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations. Christian Life Tabernacle

26

was required to perform a traffic study for the construction of its school in 2024 and for the construction of the church itself in 2012. Harmony Church withdrew its application after an unfavorable recommendation by the Planning Commission due to its inadequate plans, which failed to include a traffic study. Neither the Christian Life Tabernacle Property nor the Harmony Church property had the sewer, water, and drainage problems associated with Plaintiff's property.

109.    The allegations contained in paragraph 109 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations. The Plaintiff's traffic study was not completed until September 2024—almost a year after the Planning Commission meeting in which it was ordered. The Planning Commission then held its meeting on Plaintiff's application in December, 2024. Addressing the only Christian institution identified as a comparator in the First Amended Complaint, the City avers that Christian Life Tabernacle's application did not take as long to approve because it did not delay conducting its traffic study and providing it to the City as Plaintiff did, nor did its application present the sewer, water and drainage problems associated with Plaintiff's property.

110.    The allegations contained in paragraph 110 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations and avers that Plaintiff's traffic study contained inaccurate findings and that, when questioned by Board Members at the February 11, 2025 Board meeting, Dr. Lipinski advised the Board for the first time that he "didn't want to collect data when school was in session or to collect data where there might be any other areas of adverse impact." With respect to the requested data regarding cut-through traffic, contrary to the actual facts known by anyone living in or familiar with the area, Dr. Lipinski advised the Board

that his data "showed cut through traffic on Louella only when the train was there;" advised the Board that he collected no data on Fonta, which is used as a cut-through; and admitted that "Five-way" (the closest intersection to the proposed Mosque) was terrible," confirmed that its level of service was "F," and stated that he would never design it.

111. The allegations contained in paragraph 111 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations and avers that Plaintiff's traffic study contained inaccurate findings and that, when questioned by Board Members at the February 11, 2025 Board meeting, Dr. Lipinski advised the Board for the first time that he "didn't want to collect data when school was in session or to collect data where there might be any other areas of adverse impact;" that, contrary to the actual facts known by anyone living in or familiar with the area, Dr. Lipinski advised the Board that his data "showed cut through traffic on Louella only when the train was there;" that Dr. Lipinksi advised the Board that he collected no data on Fonta, which is used as a cut-through; and advised the Board that "Five-way" (the closest intersection to the proposed Mosque) was terrible," confirmed that its level of service was "F," and stated that he would never design it.

112. The allegations contained in paragraph 112 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies that Alderman/Vice Mayor Young admitted his decision was pre-determined; rather, he simply questioned the validity of the conclusions in the traffic study that were contrary to his longstanding personal knowledge of the intersection and area at issue. The City further avers that the Alderman/Vice-Mayor's concern as to the accuracy of the conclusions in the traffic study was validated during the February 11, 2025 Board meeting.

113.    The allegations contained in paragraph 113 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations. The message included in paragraph 50 was not between two Planning Commissioners. The City denies any suggestion that the knowledge of any Planning Commissioner or Alderman of the unique traffic, sewer, water, and drainage problems associated with the location where Plaintiff sought to build the Mosque is improper or is evidence of discriminatory motive.

114.    The allegations contained in paragraph 114 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations.

115.    The allegations contained in paragraph 115 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations.

116.    The City incorporates by reference the responses and defenses asserted in the preceding paragraphs as if set forth verbatim herein.

117.    The City admits that the statute referenced in paragraph 117 contains the cited language, but denies that it violated said statute.

118.    The City admits that the statute referenced in paragraph 118 contains the cited language.

119.    Admitted.

120.    The allegations contained in paragraph 120 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations.

121.   The allegations contained in paragraph 121 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations and avers that, as Plaintiff cannot establish a substantial burden on its religious exercise caused by the City, the compelling governmental interest issue need not be addressed.

122.   The allegations contained in paragraph 122 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations and avers that, as Plaintiff cannot establish a substantial burden on it religious exercise caused by the City, the least restrictive means issue need not be addressed.

123.   The allegations contained in paragraph 123 of the First Amended Complaint constitute legal conclusions or argument to which no response is required. To the extent that a response is deemed to be necessary, the City denies said allegations and avers that it did not treat Plaintiff differently than any other religious or non-religious entity and that the expense involved with the application and the traffic study are such that would be incurred by any applicant seeking a special use permit for a problematic tract, particularly a tract such as Plaintiff's tract that necessitated approval from an entity outside the control of the City of Bartlett to bore under a railroad track to obtain one or more utilities; and the expense to maintain its property is imposed upon all property owners.

124.   The City admits that the statute referenced in paragraph 124 contains the cited language, but denies that it violated said statute and denies that Plaintiff is entitled to the relief sought.

125.    The City denies that Plaintiff is entitled to any of the relief sought in its Prayer for Relief.

126.    Any allegation not heretofore admitted, denied or explained is here and now denied.

127.    The City demands a trial by jury.

### THIRD DEFENSE

The City has not imposed or implemented a land use regulation in a manner which imposes a substantial burden on a religious exercise, including religious assembly or practice under either federal or state law.

### FOURTH DEFENSE

The City has not imposed or implemented a land use regulation in a manner that treats a religious assembly or institution on less than equal terms than a non-religious assembly or institution.

### FIFTH DEFENSE

The City did not impose or implement a land use regulation in a manner that discriminates against any assembly or institution on the basis of religion or religious denomination.

### SIXTH DEFENSE

Each action taken by the City was based upon legitimate, non-discriminatory reasons, and had nothing to do with the religious identity of the Plaintiff. The members of both the Planning Commission and the Board of Mayor and Aldermen made clear that the decision to give an unfavorable recommendation and the decision to deny Plaintiff's application for a special use permit were site-specific and were not based on the Plaintiff's religious identity. Instead, members of both Boards stated that they want Plaintiff and its mosque to be a part of the Bartlett community.

## SEVENTH DEFENSE

The traffic study in question was flawed and inaccurate because, by admission of its own author, Dr. Lipinski advised the Board for the first time at the February 11, 2025 Board meeting that he did not want to "collect data where there might be any other areas of adverse impact;" that he did not want to collect traffic data while school was in session; that he did not consider cut-through traffic through the Louella neighborhood as specified by the City; that he did not consider the impact of traffic from the Ninth Grade Academy, which included bus traffic heading to several Bartlett schools during the morning time period prior to the start of school and during the period of early morning prayer at the proposed mosque; and that he did not consider the impact of buses driving through the area prior to the 2:00 p.m. dismissal of the Ninth Grade Academy and several elementary schools and the fact that afternoon prayer at the proposed mosque would take place between 1:00 and 2:00 p.m.

## EIGHTH DEFENSE

Even if the traffic study was not flawed, the City's decision to deny the special use permit under the circumstances presented was not arbitrary, capricious, or discriminatory, but was based upon legitimate, non-discriminatory reasons and compelling governmental interests.

## NINTH DEFENSE

While denying that Plaintiff has a cause of action against it under any theory or that it violated Plaintiff's rights under federal or state law, and pleading in the alternative, any arguments or evidence about the City's decision-making process is not relevant to the substantial burden inquiry.

## TENTH DEFENSE

The denial of the special use permit to construct and operate a mosque in the particular residential neighborhood at issue in the present case is not a substantial burden on a religious assembly or institution because a mosque can be constructed and/or operated in other zoning classifications or on other parcels within the City of Bartlett.

## ELEVENTH DEFENSE

The denial of Plaintiff's application for a special use permit did not impose a substantial burden on Plaintiff's religious exercise because there are feasible alternative locations in Bartlett where the Plaintiff can conduct its religious activity. There is no categorical ban in Bartlett for the construction of houses of worship. To the contrary, Plaintiff is able obtain additional space in its current location that would meet its needs; Plaintiff is able to build its mosque or buy or rent a building to use as a mosque in a commercially zoned district without seeking a special use permit. Plaintiff could also build its mosque or buy or rent a building to use as a mosque in another RE-zoned district that does not have the significant traffic, sewer, water and drainage problems as the proposed property, and for which approvals by an entity outside the control of the City of Bartlett to bore under a railroad truck to obtain one or more securities would not be required.

## TWELFTH DEFENSE

The City has not imposed a substantial burden on Plaintiff's exercise of religion because Plaintiff chooses to continue to operate out of its current leased and self-described "temporary" space since 2019. Contrary to the allegations in the First Amended Complaint, the City is not forcing Plaintiff to continue to use a leased space that it alleges is inadequate to meet its members' religious needs. Plaintiff makes clear that the property is leased and temporary. The City has done nothing to impede Plaintiff from leasing a larger space that is more conducive to its needs. The

fact that Plaintiff continues to lease a space that it contends cannot meet the needs of its members is a burden that it has imposed on itself and one not imposed by the City. Plaintiff has not pleaded, nor could it in good faith plead, that no feasible alternative exists in Bartlett where Plaintiff could build or could buy or rent a building that would allow Plaintiff to meet its members' religious needs.

## THIRTEENTH DEFENSE

The denial of the application for a special use permit did not impose a substantial burden on Plaintiff's religious practice because Plaintiff obtained an interest in the subject property without a reasonable expectation of being able to use it for the sought-after religious purposes, nor did it receive any indication from the City that a special use permit would be issued and that approvals by entities outside the control of the City of Bartlett would be obtained.

## FOURTEENTH DEFENSE

Any burden on the Plaintiff's members' religious beliefs was self-created and imposed on itself by purchasing a property at a well-known problematic intersection that was not zoned for the construction of a house of worship and without any assurances from the City that a required special use permit would be granted and that approvals by entities outside the control of the City of Bartlett would be obtained. Any present alleged burden placed on its member's religious beliefs or practice at its current location is also self-imposed because Plaintiff continues to use a temporary rented space and has not sought to rent available space next door to its current mosque or elsewhere in the City of Bartlett, nor has it considered available feasible alternative properties in Bartlett or the surrounding area that it could purchase or rent.

34

## FIFTEENTH DEFENSE

The allegation that Plaintiff's members must drive into Memphis, among other reasons, to receive instruction from an imam is a mere inconvenience that does not give rise to a substantial burden.

## SIXTEENTH DEFENSE

Without admitting that Plaintiff has a cause of action against it under the statutes cited in the First Amended Complaint or otherwise, and denying that it imposed a substantial burden upon Plaintiff, and pleading in the alternative, the City avers that its actions were in furtherance of a compelling government interest and were narrowly tailored to further that interest.

## SEVENTEENTH DEFENSE

Plaintiff's claims are barred by the clean hands doctrine.

## EIGHTEENTH DEFENSE

 Plaintiff's claims are barred by the doctrines of waiver and estoppel.

## NINETEENTH DEFENSE

Plaintiff has failed to mitigate its damages, if any.

## TWENTIETH  DEFENSE

Plaintiff has failed to state a basis in law or fact for injunctive relief and/or declaratory relief.

## TWENTY-FIRST DEFENSE

The City reserves the right to amend or supplement this Answer as additional information becomes available through discovery.

Respectfully submitted,

s/ Edward J. McKenney, Jr.
Edward J. McKenney, Jr. #5380
William L. Brantley, #038403

HARRIS SHELTON HANOVER WALSH, PLLC.
6060 Primacy Parkway, Suite 100
Memphis, Tn 38119
(901)525-1455
emckenney@harrisshelton.com Email
wbrantley@harrisshelton.com Email
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing Answer to First Amended Complaint was served by electronic means via the Court's electronic filing system to Mr. Daniel A. Horwitz, Sarah L. Martin, and Alexandra Gombar, 4016 Westlawn Drive, Nashville, TN 37209, and Ms. Stella Yarbrough, Lucas Cameron-Vaughn, and Zee Scout, P.O. Box 120160, Nashville, TN 37212, Attorneys for the Plaintiff, on this 20th day of October, 2025.

.

s/ Edward J. McKenney, Jr.
Edward J. McKenney, Jr.